### AMERICAN TRI-ERGON CORPORATION et al. v. COE et al.
#### No. 67179.

District Court of the United States for the District of Columbia.
Oct. 12, 1939.

Leslie C. Garnett and Samuel F. Beach, both of Washington, D.C., and Page S. Haselton, of New York City, for plaintiff American Tri-Ergon Corporation.

R. F. Whitehead, of Washington, D.C., for defendant Coe.

Leonard Day, of New York City, for defendant Radtke.

Kimball Fletcher, Jr., of Los Angeles, Cal., for defendant Whitson.

GOLDSBOROUGH, Justice.

For the purposes of this opinion, the plaintiff will be called Vogt and the defendants, Radtke and Whitson.

This is an interference proceeding in which each of the indicated parties seek the grant of a patent because of priority of invention upon the following counts.

1. In sound reproducing apparatus, the combination of a photoelectric cell having an alkali cathode, means for illuminating the cell with acoustically-modulated light, and a circuit connected with said cell in which flows a correspondingly modulated current.

2. In sound reproducing apparatus, the combination of a photoelectric cell having an alkali cathode, a constant source of light, means for uniformly progressing a film between said source and cell, said film carrying a photographic sound record of varying capacity, so that said cell is illuminated by acoustically-modulated light, which has passed through the film, and a circuit connected with said cell in which flows a correspondingly modulated current.

3. In sound reproducing apparatus, the combination of a photoelectric cell having an alkali cathode, means for illuminating the cell with acoustically-modulated light, an amplifier, a circuit connecting said cell with said amplifier, a sound reproducing device, and a circuit connecting said amplifier with said sound reproducing device.

4. In sound reproducing apparatus, the combination of a photoelectric cell having an alkali cathode, means for illuminating the cell with acoustically-modulated light, an amplifier, a circuit connecting said cell with said amplifier, and a circuit connected with said amplifier, in which flows amplified currents which vary correspondingly with the variations of said acoustically-modulated light.

### The Case of Radtke.

Radtke claims conception and disclosure on the 20th of November, 1916 and introduced into evidence a circuit drawing of that date called the Leich drawing. He claims a complete reduction to practice in January 1917; also reduction to practice in

1918 and in November 1919, although the only satisfactory evidence of the so-called 1918 reduction to practice fixes the date as of September 1919. The Court specifically rules that it must be controlled by the September 1919 date. The Radtke application was actually filed on December 27, 1922. Each one of the four counts in issue contemplate reproduction of sound by acoustically-modulated light. The three alleged reductions to practice above mentioned all involve production of sound and not reproduction of sound, as contemplated by the issues in this case.

In a previous trial, Radtke stated that a so-called "Drum Heliophone", which allegedly was the basic apparatus used in the November 1919 reduction to practice, had nothing to do with the reproduction of sound, but involved the amplification of heart beat sounds.

As regards the Leich drawing, it was not produced by Radtke at any of the Patent Office hearings, nor was it referred to by him in these hearings. Radtke stated that he made the drawing in November 1916, put it in a magazine, laid it in the drawer of his desk, and inferentially lost sight of it. He stated that recently he was examining a bound volume of the indicated magazine and that the drawing dropped out. Leich, who allegedly witnesses the drawing, is dead, and a stenographer was produced who stated that she had placed her initials under Leich's name on a drawing at Radtke's request, as a witness to Leich's signature. Radtke's corroboration as to the drawing was not of a character which would justify a court in basing any conclusion upon it.

██ I think that the Court should say that Mrs. Phillips, the stenographer referred to, impressed the Court favorably; but at the time of the alleged conception and drawing, she was employed in an adjoining office, was merely called in to witness Leich's signature, knew nothing about the subject matter of the drawing, and had no scientific education; so that any identification of the drawing obviously could not be made by her.

The patent application of March 27, 1922, undoubtedly disclosed the counts at issue, but it is to be noted that on the 26th day of May, 1921, when Radtke sent his application to his attorney in Washington, the so-called British abridgements, which contained a description of the circuit described by Radtke in his application had been in a scientific library in Chicago, frequented by Radtke, since May 17th.

██ But even if the Court had been able to find a conception and disclosure in November 1916, and any of his claimed reductions to practice, it would still be forced to hold that there was deliberate suppression and concealment on his part until May 26, 1921 when he sent his application to his attorney in Washington. Quoting from Radtke's testimony from a point on page 1295, to a point on page 1298 of the record, Radtke testified as follows:

"The Court. Then, as I understand it, the sketch of November 20, 1916, corresponds in all the points indicated as the drum heliophone with its associated apparatus exhibited in 1919; is that right?

"The Witness. Yes, your Honor; and the Leich sketch showing these elements in association that I have mentioned was present in the test made by me in January of 1917.

"The Court. What apparatus did you have then?

"The Witness. I had the cigar machine with the circuit set up in accordance with the Carlson drawing which also had every one of these elements in combination, and I proved with that combination that I got an acoustically modulated beam of light which produced sound when I waved the strip record in the vision of the photo-electric cell.

"The Court. That, of course, is his conception of what he did, not a judicial conclusion.

"By Mr. Day:

"Q. Relatively to that last answer, describe Figure 2 of Radtke Interference Exhibit 8 and also tell what this Exhibit 8 is. A. Radtke Exhibit 8 of the Interference record 63090 is the original sketch which I sent to the patent attorney, Boyden, here in Washington, in May of 1921, accompanied by a specification drawing for patent application; and in this sketch are shown every one of the elements necessary for producing sound from an acoustically modulated record. The light source is here (indicating).

"The Court. As I understand it, this drawing in 1921 which you sent to your patent attorney in Washington was no different in principle from the drawing you

made in 1916, and that the drawing you made in 1916 would have been adequate if sent to your attorney in Washington to justify an application for a patent, including the four counts involved in this issue. Is that what you say? Is that what your testimony is?

"The Witness. Well, with the proper explanation with which I accompanied the specification; that is, I would have to tell the patent attorney the interrelation of these pieces of apparatus.

"The Court. Well, from the drawing you made in 1916 could you have given him an explanation which would have been sufficient to justify an application containing the four counts at issue in this case?

"The Witness. Yes.

"The Court. Why didn't you do it in 1916?

"The Witness. Well, in the first place, it is unwise to rush into the Patent Office with an idea until you are sure that someone else will not see more in your invention than yourself and file another application which will preclude your getting really the benefits of what you have done. I have another case at the present time in my own hands that I have failed to go into the Patent Office with for fear that the Patent Office would say, 'Your claims are allowed and patent will be issued,' before I have sufficient time to investigate all the applications to which I can put this invention as soon as they grant me this patent.

"Mr. Haselton. I object to this discussion of other patents and patent practice.

"The Court. I asked him why he did not do it, and he is trying to tell me. It may have been an unwise question for me to ask him, but it does not seem so to me. It seems to me that it is a good question to ask him. He is just trying to tell me. So, if there is any fault it is mine.

"Mr. Haselton. I am sorry, Your Honor.

"The Witness. Do you want me to continue?

"The Court. You were afraid you would 'lose the ball'?

"The Witness. Yes, sir. It is true that those who rush into the Patent Office with a half-baked idea come out with one."

Again quoting from Radtke's testimony from a point on page 1620 of the record to a point on page 1622 of the record, Radtke's testimony is as follows:

"By Mr. Fletcher:

"Q. As I remember your testimony of the other day, Mr. Radtke, his Honor asked you if you in 1917 had by use of the cigar sorter a device sufficient, in your opinion, to file an application on it for letters patent.

"The Court. No, I asked him if it was complete reduction to practice.

"Mr. Fletcher. You asked him if it was complete reduction to practice.

"The Court. And he said it was.

"Mr. Fletcher. He said it was.

"By Mr. Fletcher:

"Q. Why didn't you file your application on it then, if you had filed your applications in the other cases immediately afterward? A. Well, for a great number of reasons. For instance, in the 1904 application I filed patent on something, and it had almost expired before a company came and bought it from me. It would be committing suicide to invest your money into something that the art had not developed up to.

"For instance, in this particular instance of the patent on the method of balancing a three-phase circuit, why, there were no methods except manual methods of balancing three-phase circuits, and I saw there was a chance—and I saw we had methods of balancing three-phase circuits, but I saw balancing a three-phase circuit was something that was coming in the art of electric light and power, and I filed application in an endeavor to sell it to the big companies which would be able to utilize it, and it was, as I say, ten years later, about 1915 that the General Electric Company came back to me and asked me if I would be willing to sell it to them at the price I had offered to them in about 1906 or thereabouts, so that it would be ridiculous to file until you are ready.

"By the Court.

"Q. You are stating here, as I understand it now, that one of your reasons—at least one of your reasons—for not filing an application as soon as you had completely reduced this device to practice was that you were apprehensive and had a feeling that your patent might expire before the art had advanced sufficiently to induce the large companies to utilize the device? Is that about right? A. That is one reason.

"Q. That is one reason. One more question, then: As I understand it, for

commercial reasons—that is, for financial reasons—you deliberately withheld the knowledge of the device from the public for the reason which you have stated? A. Yes, there were very decided financial reasons why I could not go ahead."

If the Court was deciding the case solely on the ground of suppression and concealment, it could give Radtke an effective date of May 26, 1921; but in view of the Court's ruling on the merits of the claimed conception and disclosure and the three claimed reductions to practice, the Court holds Radtke's effective date to be the date of his application, May 27, 1922.

### The case of Vogt.

Vogt is owner of a patent application filed in the United States on April 4, 1921. This application, under the provisions of R.S. § 4887, 35 U.S.C.A. § 32, as modified by the "Nolan Act", 35 U.S.C.A. § 80 et seq., is based on their German application of March 3, 1919. The four counts here involved were objected to by the primary examiner of the Patent Office on the ground that their subject matter did not involve patentable inventions. The plaintiff appealed to the Board of Examiners-in-Chief of the Patent Office (now called Board of Appeals of the Patent Office), where the decision of the primary examiner was confirmed.

Plaintiff then brought suit in this Court against the Commissioner of Patents under R.S. § 4915, 35 U.S.C.A. § 63, praying that the Commissioner be authorized to grant a patent to the plaintiff, containing the same four claims as here involved.

The Commissioner of Patents filed his answer and the case was tried before Justice Adkins; finding of facts and conclusions of law were filed by him, and a decree entered holding that the four counts in issue were patentable, that Vogt had made a disclosure of the four counts in his application for patent, and that his effective date was March 3, 1919, the date of the German application.

Before the Commissioner of Patents had taken any action pursuant to Justice Adkins' decree, Radtke and Whitson, who then had their applications pending in the Patent Office, incorporated the four counts in issue in their respective applications, each asserting that he was the first inventor and demanding that interference proceedings be instituted.

Testimony was taken by the various parties and the interference submitted to the Patent Office tribunals for decision. Both held that Vogt and Whitson had not made the counts, and the Board of Appeals gave Radtke an effective date as of the fall of 1919.

A patent was awarded to Radtke covering the four counts in issue.

The plaintiff then instituted the present suit.

It is conceded by all parties that the Vogt German patent disclosed the four counts in issue and it is equally clear to this Court that Vogt is entitled to the provisions of the "Nolan Act", there being amply sufficient in the American application of April 4, 1921 to disclose the German patent; only certain non-patentable details thoroughly well known in the art were omitted.

It is also apparent from the evidence that complete details of the German patent were incorporated in the United States application on the 16th day of March 1922 before the effective date of the Radtke claim, which this Court, as before stated, holds to be December 27, 1922.

This Court further finds, upon a careful examination of Justice Adkins' decision, that Justice Adkins specifically held Vogt's effective date to be March 3, 1919, and further finds that in order for Justice Adkins to have authorized the Patent Office to issue a patent to Vogt, he had to find that the Vogt patent disclosed the four counts. This Court further holds that while Justice Adkins' decision does not, as to this Court, involve the principles either of res adjudicata, or of stare decisis, it is a considered finding in a controverted case that Vogt disclosed the four counts at issue, and should control this Court, unless this Court should be perfectly clear that there was error in the prior decision, or that there was, in this case, additional evidence offered which might have induced a different decision in the prior case if it had been there offered. The Court finds neither the error nor the evidence.

### Case of Whitson.

In the case of Whitson, the Court agrees with the decision of the Patent Office tribunals that the disclosure of his application was insufficient and that the device thereby disclosed was inoperative. In view of this finding, it is unnecessary to discuss other features of the Whitson case which would cause the Court inevitably to reach the same conclusion.

The Court finds that the Commissioner of Patents should issue a patent to Vogt, and will pass a decree authorizing this to be done.

At the time of the filing of the decree, the Court will also file findings of fact and conclusions of law.